UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

VERNISE G. LEBARON, 11-3026-TC

Plaintiff,

v. ORDER

MICHAEL J. ASTRUE, Commissioner Social Security Administration,

Defendant.

COFFIN, Magistrate Judge:

Plaintiff seeks review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the following reasons, I affirm the Commissioner's decision.

**Background**

Plaintiff was fifty years old when the Commissioner denied her applications for benefits. She has an eleventh grade education, and has past work experience as a telemarketer. She filed applications for DIB and SSI on January 4, 2007, alleging disability since December 11, 2004 due

to back problems and chronic obstructive pulmonary disease (COPD). The agency denied plaintiff's applications initially and upon reconsideration. Plaintiff requested a hearing. On April 7, 2009, an Administrative Law Judge (ALJ) held a hearing. Plaintiff, who was represented by counsel, testified. Witness Janet Myers and vocational expert Frances Summers also testified at the hearing.

On July 16, 2009, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. The Appeals Council denied plaintiff's request for review on January 20, 2011, making the ALJ's decision the Commissioner's final decision. Plaintiff timely filed this action seeking judicial review of the Commissioner's decision.

**Disability Analysis**

The Commissioner engages in a sequential process of between one and five steps in determining whether an individual is disabled under the Act Bowen v. Yukert, 482 U.S. 137, 140 (1987). At step one, the ALJ determines if the claimant is performing any gainful activity. If he or she is, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). Step two requires a determination of whether the claimant has a "severe medically determinable physical and mental impairment" that meets the twelve month duration requirement. Id. §§ 404.1520(c), 416.920(c). If the claimant does not have such an impairment, he or she is not disabled. At step three, the ALJ assesses whether the severe impairment (or combination of impairments) found in step two meets or equals a "listed" impairment in the regulations. Id. §§ 404.1520(d), 416.920(d). If the impairment or combination of impairments equals a listed impairment, the claimant is disabled.

If the impairment or combination of impairments does not equal a listed impairment, the ALJ proceeds beyond step three. The ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment

of work-related activities the claimant may still perform on a regular basis, despite the limitations imposed by his or her impairments. Id. §§ 404.1520(a), 416.920(a). The ALJ uses the RFC to determine if the claimant can perform past relevant work at step four. Id. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his or her past relevant work, the ALJ must determine if the claimant can perform other work in the national economy at step five. Id. §§ 404.1520(f), 416.920(f); Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).

The claimant bears the initial burden of proof at the first four steps. Tackett, 180 F.3d at 1098. At the fifth step, the burden shifts to the Commissioner to show jobs within claimant's RFC exist in the national economy. Id. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

**The ALJ's Findings**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. At step two, the ALJ found that plaintiff had a severe combination of impairments: thoracic spine cord compression and disk herniation, cervical spine strain, chronic obstructive pulmonary disease, depression and substance abuse disorder. Plaintiff disputes the finding of a substance abuse disorder.

At step three, the ALJ found that plaintiff's combination of impairments did not meet or equal a listed impairment and assessed plaintiff's RFC as the ability to perform light work with an inability to sustain work on a full time basis. The ALJ found that, without substance abuse, plaintiff 's RFC was a full range of light work. Plaintiff disputes this finding, arguing that her pain complaints render her unable to sustain work on a full time basis.

At step four, the ALJ found that, without substance abuse, plaintiff could return to her past

work as a telemarketer. Plaintiff disputes this finding to the extent that it relies on the disputed RFC finding. Because the ALJ found plaintiff not disabled at step four, the ALJ did not proceed to step five.

## Review Standard

This court's review is limited to whether the Commissioner's decision to deny benefits to plaintiff is based on proper legal standards under 42 U.S.C. § 405(g) and supported by substantial evidence on the record as a whole. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the ALJ's finding is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## Analysis

As noted above, plaintiff disputes the ALJ's step two finding that one of her combined

impairments was substance abuse and the ALJ's findings--that she's able to perform a full range of light work but for the substance abuse and can perform her past work as a telemarketer, that relied on the substance abuse finding. Plaintiff specifically argues that the ALJ erred by: finding that she had a substance abuse disorder; failing to properly consider statements from treating physician Karen Sauer MD, failing to properly assess her credibility; failing to properly consider testimony from lay witness Janet Myers; improperly considering her ability to perform daily activities; and improperly basing the decision on the opinion of the vocational expert (VE).

**1. Substance Abuse Disorder**

Plaintiff contends that the ALJ erred by finding that she had a substance abuse disorder based "solely on [the ALJ's] finding that plaintiff was 'quite inebriated' and appeared confused and 'drunk' at the time of an emergency room visit in August 2004." Pl.'s Brief at 16. Plaintiff further argues that "isolated incidents of drug use on two occasions . . . are not evidence of drug addiction materially contributing to her disability . . . " Reply Brief at 2.

The ALJ based her finding of a substance abuse disorder on evidence in the record of alcohol abuse, history of methamphetamine use, and apparent drug-seeking behavior. Tr. 16,19, 20, 23, 27. The ALJ found that absent the substance disorder, plaintiff would be able to perform the full range of light work described in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Tr. 23. Moreover, the ALJ found that even if plaintiff stopped abusing substances, the severity of her physical impairments--singly or in combination-- would still fail to meet any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) and 416.920(d)). Tr. 25. Only when the substance disorder was accounted for did the ALJ find that plaintiff could not perform the full range of light work on a full-time basis. Tr. 23-24. Thus, even if the ALJ erred in finding that substance

abuse was a severe impairment, the error was harmless because the ALJ also found that absent the substance abuse impairment, plaintiff's physical and mental impairments or combination thereof would not render a finding of disabled. Tr. 24. Presumably, plaintiff's argument is an attempt to challenge the ALJ's step four finding by contending that substance abuse was not a "contributing factor material to the determination of disability," and absent substance abuse, she should have been found disabled. Since the error at step two was harmless, however, the Court declines to pursue the issue further.

**2. Consideration of Statements by Dr. Sauer**

Plaintiff argues that the ALJ failed to state clear and convincing or specific and legitimate reasons for discrediting and/or discounting the medical opinion of Plaintiff's treating physician regarding the medical severity of Plaintiff's impairments. An ALJ considers all relevant medical evidence and is responsible for resolving its ambiguities and conflicts. 20 C.F.R. §§ 404.1527, 415.927; Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004). "Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record . . . [e]ven if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Murray v. Heckler, 722 F.2d 499, 501-02 (9th Cir. 1983)).While an ALJ should generally give more weight to the opinion of a treating doctor rather than that of an examining doctor, an ALJ may nevertheless reject a treating doctor's opinions "that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings. Batson, 359 F.3d at 1195. Further, an ALJ need not completely reject the opinion of a treating

doctor, but may assign less than controlling weight if that opinion is not well-supported by objective medical evidence, or is inconsistent with other substantial evidence. Id.; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Social Security Ruling 96-2p. If evidence exists to support more than one rational interpretation, the reviewing court must defer to the Commissioner's decision. Batson, 359 F.3d at 1193.

In the instant case, the ALJ declined to give Dr. Sauer's opinion controlling weight because she found that Dr. Sauer's opinion was not well supported by objective medical evidence and was inconsistent with substantial evidence in the record. Tr. 29. Plaintiff argues that the ALJ wrongly rejected Dr. Sauer's opinion because it was based too heavily on plaintiff's subjective pain descriptions. See Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194 (9th Cir. 2008). However, the court does not find that the ALJ rejected Dr. Sauer's opinion solely because of her reliance on plaintiff's testimony, for the following reasons. First, the ALJ found that Dr. Sauer opined via two checklist forms that plaintiff was not able to lift more than five pounds at a time, was not capable of repetitive grasping or fine manipulation with her hands, and must lie down three times per day for one hour at a time. Tr. 425, 555-56. On the same day, however, plaintiff had reported to Dr. Sauer that she had taken a multi-day motorcycle trip from Oregon to Arizona in the previous month, and "feels overall she did well" on the excursion. Tr. 29, 541. The ALJ found that plaintiff's ability to travel long distances by motorcycle was inconsistent with Dr. Sauer's simultaneous opinion regarding plaintiff's grasping limitations. Tr. 29, 425. The ALJ also found plaintiff's other reported activities, such as cleaning house for ten people, driving herself to California, mowing the lawn, baking cakes for fellow NA (Narcotics Anonymous) attendees, and attempting to use an exercise ball and a stationary bike were inconsistent with Dr. Sauer's appraisal of plaintiff's limitations. Tr. 27-29.

Second, the ALJ noted that plaintiff's examination history with Dr. Sauer showed normal motor strength, sensation, and reflexes in the upper extremities through the course of plaintiff's treatment, which were inconsistent with the conclusions reflected in the 2007 and 2009 checklist forms regarding plaintiff's pain-induced work limitations. Tr. 17-18, 29, 381, 383, 425, 506, 555-56. The ALJ also noted that examining physician Dr. Chua found that plaintiff had full strength, normal reflexes and gait, and no evidence of dermitomal or radicular deficits; findings consistent with Dr. Sauer's examination history, but again, inconsistent with Dr. Sauer's conclusions. Tr. 26, 268-69. Defendant argues that plaintiff's 2006 MRI results, which revealed "moderately severe spinal stenosis and cord compression," and "minimal impingement on the ventral aspect of the cord at C3-4 and C4-5 represent objective medical evidence which provides a basis for Sauer's opinion. Tr. 18-19, 555-557 However, while the court acknowledges that moderate spinal stenosis and minimal impingement of the cord could reasonably cause pain, a review of Dr. Sauer's treatment records reveal that despite the MRI results, plaintiff reported "good pain improvement" with low doses of methadone in January 2007, and other subsequent self-reports by plaintiff indicated that her pain was controlled and stable Tr. 378, 381, 507, 519-520, 527-528, 530-531. These reports appear inconsistent with Dr. Sauer's conclusions regarding the severity of plaintiff's pain impairments. The ALJ further noted that despite diagnosing plaintiff with chronic obstructive pulmonary disease (COPD), Dr. Sauer nonetheless "specifically authorized [work] environments including dust, fumes, gases, etc." Tr. 20, 29, 425. Additionally, when plaintiff presented to an emergency room in October 2006 complaining of back pain and seeking medication, an examining clinician noted no acute evidence of spinal stenosis or spinal cord impingement. Tr. 18, 374. Finally, the ALJ noted that upon review of the record, state agency medical consultant Dr. Sharon B. Eder found plaintiff had the capacity to perform medium

work. Tr. 27.

In light of the apparent inconsistencies in the medical and testimonial evidence discussed above, the court finds that the ALJ provided clear and convincing rationales, based on substantial evidence in the record, for her interpretation that Dr. Sauer's conclusions were not well supported. Assigning Dr. Sauer's opinion minimal weight, therefore, was not reversible error.

**3. Plaintiff's Credibility Determination**

Plaintiff alleges that the ALJ improperly rejected her subjective pain testimony without making specific findings stating clear and convincing reasons for doing so, and further alleges that the ALJ's credibility determination was premised wholly on a lack of medical support for the severity of plaintiff's pain. Generally, when the record establishes a medically determinable impairment that could reasonably cause plaintiff's symptoms, an ALJ must evaluate the claimant's credibility. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling (SSR) 96-7p. An ALJ must make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tomasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Further, while an ALJ may find testimony not credible in part or in whole, it is legal error to make a negative credibility finding based solely on finding symptom testimony not substantiated by objective medical evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citing Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)); see also SSR 96-7p. Nonetheless, a court need not uphold all of an ALJ's reasons for discrediting a claimant, so long as the ALJ's decision is supported by substantial evidence. Batson, 359 F.3d at 1197.

In this case, the ALJ followed the proper procedure for determining plaintiff's credibility. An ALJ may consider many factors in weighing a claimant's credibility, including ordinary techniques

of credibility evaluation (including prior inconsistent statements regarding symptoms and testimony that appears less than candid), unexplained or inadequately explained failure to seek treatment or follow prescribed treatment, and claimant's daily activities. Tommasetti, 533 F.3d at 1039; see also 20 C.F.R. §§ 404.1529(c), 416.929(c). Here, the ALJ noted several inconsistencies in plaintiff's prior statements to care providers regarding her symptoms.[1] While plaintiff testified that her arms would "go numb" and cause her to drop things, both Dr. Chua and Dr. Sauer consistently observed intact strength, sensations, and reflexes in her arms. Tr. 17-18, 26, 268, 381, 506, 557. Plaintiff reported to her treating physician in 2006 that she was doing "most of the housework" in a home where ten people were living, however, she then stated to Dr. Sauer that "she was not able to hold a loaf of bread in her left hand for the last year or so." Tr. 27, 273, 381. Plaintiff also reported driving alone to California in March 2007, and then traveling by motorcycle to Arizona in June/July 2007. Tr. 27, 394, 541. As for failure to seek treatment or follow prescribed treatment, the ALJ noted at least two instances, including plaintiff's failure to complete pulmonary functioning tests, and her failure to begin physical therapy to alleviate pain until plaintiff had finished a school semester. Tr. 26-27. Finally, the ALJ noted that plaintiff performed a number of activities, including using an exercise ball, riding a stationary bicycle, and mowing the lawn, despite her allegations of debilitating pain. Tr. 27.

Plaintiff asserts that the ALJ was "comparing apples and oranges" in noting that plaintiff

---

[1]The court recognizes that the ALJ used "disfavored" language in her analysis by explaining that "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." An ALJ must consider a claimant's credibility in the course of assessing a residual functional capacity (20 C.F.R. § 404.1545(a)(3); SSR 96-8p at *7 (available at 1996 WL 374184)) rather than determining credibility based on the extent which a claimant's testimony comports with the RFC finding. Despite the ALJ's phrasing, however, the record reflects that the ALJ properly considered plaintiff's credibility in the course of determining the RFC.

doing "most of the housework" in a dwelling inhabited by at least nine other people was inconsistent with her assertion that she was unable to hold a loaf of bread in her left hand during the same time period. Pl.'s Reply Brief at 8. Plaintiff also argues that traveling by motorcycle from Oregon to Arizona is not inconsistent with her reports of extreme, often debilitating pain in her upper extremities. Id. This line of argument is unpersuasive. While plaintiff's credibility cannot be rejected solely because the medical evidence does not support the alleged severity of her impairment, the ALJ properly rejected her testimony by using ordinary techniques of credibility evaluation, and providing specific, clear and convincing reasons supported by the record that her testimony was not fully credible. See Thomas v. Barnhart 278 F.3d 947, 960 (9th Cir. 2002). As mentioned above, the ALJ identified specific contradictions between plaintiff's subjective pain testimony and the activities she was able to perform. Furthermore, the ALJ noted that plaintiff was willing to defer treatment for her pain, and also that plaintiff's allegations did not comport to the objective medical evidence. Because the ALJ's credibility finding was reasonable and supported by substantial evidence, the court declines to engage in second-guessing of that determination. See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

**4. Testimony of Lay Witness Janet Myers**

Plaintiff alleges that the ALJ erroneously discredited the testimony of Janet Myers, a lay witness. While an ALJ must take into account lay witness testimony, an ALJ may discredit that testimony by giving specific reasons germane to each witness. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)(quoting Dodrill v. Shahala, 12 F.3d 915, 919 (9th Cir. 1993)). The ALJ found that Ms. Myers' testimony was internally inconsistent insofar as she observed that plaintiff "laying in her recliner the majority of the time," Ms Myers also "attempted to get the claimant a job" and stated that

plaintiff "was highly involved in starting NA meetings" in her area up until a "three or four months" before the hearing. Tr. 28, 62. Second, the ALJ found that there was no "clinical corollary to explain a decline in function" reported by Ms. Myers. Id. These reasons are specific and germane to the witness; thus, the ALJ did not commit reversible error in assessing the credibility of Ms. Myers' testimony.

**5. Consideration of Plaintiff's Ability to Perform Daily Activities**

Plaintiff contends that the ALJ improperly penalized plaintiff for "attempting to lead a normal life" by carrying out certain activities after her alleged onset date by considering those activities. Plaintiff's Brief at 22. This line of argument is derivative of the plaintiff credibility issue already set forth. As above, the court finds that the ALJ appropriately considered plaintiff's ability to perform daily activities in weighing the credibility of her testimony. While the court recognizes that a claimant need not be "utterly incapacitated" in order to be disabled, the court does not find that the ALJ penalized the plaintiff for attempting to lead a normal life. See Fair v. Bowen, 885 F.2d at 603. Rather, to the extent that several of plaintiff's activities undercut the credibility of her testimony regarding her subjective pain symptoms and her ability to carry out some level of substantial gainful employment, the ALJ properly considered those activities. Tr. 26, 27, 29.

**6. Opinion of the Vocational Expert**

Finally, plaintiff argues that the ALJ erred in framing her hypothetical questions to the VE, and therefore erred in basing her opinion on the VE's answer. Plaintiff's argument is essentially a restatement of the earlier claim of error regarding crediting Dr. Sauer's opinions in the RFC analysis. The hypothetical questions which plaintiff alleges were erroneous did not include the limitations set forth in Dr. Sauer's checklist form. Tr. 28-29. As discussed above, the court does not find error in the

ALJ's decision to assign the limitations set forth by Dr. Sauer minimal weight. Accordingly, as the ALJ included all of the limitations that she found to exist in the hypothetical, and because her findings were supported by substantial evidence, the ALJ did not err in excluding the limitations that the ALJ found plaintiff failed to prove. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

**Conclusion**

For all the reasons set forth herein, the court finds that the Commissioner's findings were supported by substantial evidence and inferences reasonably drawn from the record. The final decision of the Commissioner that plaintiff is not disabled under Title II or XVI of the Social Security Act is, therefore, affirmed.

The Clerk is directed to enter judgment in accordance with this order.

IT IS SO ORDERED

DATED this 24th day of February 2012.

THOMAS M. COFFIN
United States Magistrate Judge